**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO STATE CHIROPRACTIC ASSOCIATION, et al. | ) ) ) | **Case No. _____** |
| Plaintiff, | ) ) ) | **Judge:** |
| vs. | ) ) | |
| HUMANA HEALTH PLAN, INC. and HUMANA HEALTH PLAN OF OHIO, INC., | ) ) ) ) ) | **DEFENDANTS' NOTICE OF REMOVAL** |
| Defendants. | | |

## NOTICE OF REMOVAL

Defendants Humana Health Plan, Inc. and Humana Health Plan of Ohio, Inc. ("Defendants")[1] file this Notice of Removal to the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. §§ 1331, 1441(b), 1442(a) and 1446.  In support of this Notice of Removal, Defendants state as follows:

---

[1] The original complaint named Humana MarketPoint, Inc. as the only named defendant, but the amended complaint drops that entity as a party.  All Defendants join in this removal petition and agree to removal.

## INTRODUCTION

This Court has jurisdiction and this action is removable pursuant to 28 U.S.C. § 1442(a)(1) because Plaintiffs sued Defendants for actions taken in their capacity as Medicare Advantage organizations, while acting under the direction of the U.S. Department of Health & Human Services ("HHS") and its subunit, the Centers for Medicare & Medicaid Services ("CMS"), and pursuant to their respective contracts with CMS.

As Medicare Advantage organizations, Defendants have an obligation to pay providers rendering medically-necessary covered services to its members subject to the terms of the applicable Medicare beneficiary's plan, their contracts with CMS, and applicable federal statutes, regulations, and guidance. Bosman[2] acknowledges that Humana Health Plan of Ohio, Inc.  ("HHPO")[3] paid him more than the amount that he was entitled to be paid under the applicable Regional Medicare Physician Fee Schedule ("Medicare Fee Schedule"), notwithstanding his obligation to accept this amount as payment in full as a condition to treating Medicare beneficiaries.  Once he discovered the overpayments, federal law requires that Bosman return the overpayments or be subject to

---

[2]  The term "Bosman" refers to Plaintiff Thaddeus C. Bosman, D.C., Inc. While Defendants understand that Ohio State Chiropractic Association, Inc. ("OSCA") is listed as a plaintiff in this case, the OSCA did not submit any claims to Defendants, nor have the Defendants sought to recover any overpayments from the OSCA. (Exhibit A, Declaration of Melinda Hulon ("Hulon Decl.") ¶ 11).  Defendants dispute that OSCA has standing to bring claims on behalf of unidentified members of the association.

[3]  Because Humana Health Plan, Inc. does not administer Medicare Advantage plans in Ohio, it is not a proper party.  (*See* Exhibit B, Declaration of Vanessa Olson ("Olson Decl.") ¶ 5.)  If Humana Health Plan, Inc. administered Medicare Advantage plans in Ohio, the analysis in this Notice with respect to HHPO would also apply to Humana Health Plan, Inc.

2

penalties under federal law.  Bosman, however, asserts that he is entitled to keep the known overpayments.

Federal officer removal is appropriate because HHPO has a contractual and legal obligation to ameliorate fraud, waste and abuse in the federal Medicare program.  Its efforts to recoup overpayments from Bosman are in furtherance of this obligation.  Because the alleged actions taken by HHPO occurred when it was acting as a Medicare Advantage organization pursuant to its contracts with CMS and under color of CMS in administering Medicare benefits, and because it has several federal defenses to Bosman's claims, removal of this action is appropriate.

This action is also independently removable pursuant to 28 U.S.C. §§ 1331 and 1441.  Bosman's claims are predicated on federal law, as it seeks a declaration of rights under the Medicare Act.  The complaint, replete with references to Medicare, reveals a substantial federal interest.  As set forth in greater detail below, a complex framework of federal laws and regulations regulate how Medicare Advantage organizations, like HHPO, reimburse non-participating providers who render services to Medicare beneficiaries enrolled in Medicare Advantage plans.  Bosman's claims will require this Court to interpret, apply, and enforce Medicare laws and regulations in determining whether HHPO was entitled (or even obligated to) recoup overpayments made to Bosman that exceeded the amounts authorized under the Medicare Fee Schedule.  Accordingly, removal of this action is appropriate pursuant to 28 U.S.C. § 1331 on the grounds of federal question jurisdiction.

## **BACKGROUND**

By enacting Title XVIII of the Social Security Act ("Medicare Act"), 42 U.S.C. §
1395 *et seq.*, Congress "establishe[d] a federally subsidized health insurance program to
be administered by the Secretary" of the Department of Health and Human Services
("HHS"). *Heckler v. Ringer*, 466 U.S. 602, 605 (1984).  HHS delegated responsibility
for the Medicare program to CMS. *Mann v. Reeder*, 2010 U.S. Dist. LEXIS 134821, at
*7 (W.D. Ky. Dec. 21. 2010).

Medicare beneficiaries may elect to receive their Medicare benefits in different
ways. *See* 42 U.S.C. §§ 1395w-21(a)(1)(A)-(B).  First, they may receive their Medicare
benefits through Medicare Parts A and B, the "original Medicare fee for service option."
42 U.S.C. §§ 1395w-21(a)(1)(A), 1395c *et seq.,* 1395j *et seq.*  Alternatively, under
Medicare Part C, Medicare participants obtain their Medicare benefits through a
Medicare Advantage plan.  42 U.S.C. §§ 1395w-21(a)(1)(B), 1395w-22 *et seq.*  Payment
of a claim to the provider by a Medicare Advantage organization is treated the same as a
payment of benefits to the beneficiary.  *See* 42 U.S.C. § 1395gg(a) ("Any payment under
this subchapter [42 USCS §§ 1395 et seq.] to any provider of services or other person
with respect to any items or services furnished any individual shall be regarded as a
payment to such individual.").

Defendants are Medicare Advantage organizations that provide Medicare benefits
under Part C of the Medicare Act to beneficiaries who elect to enroll in their Medicare

Advantage plans.  (Hulon Decl. ¶ 4.);[4] s*ee also* 42 U.S.C. § 1395w-22(a).  Defendants have contracted with CMS to administer Medicare benefits, on behalf of the federal government, through their Medicare Advantage plans.  (Olson Decl. ¶¶ 4, 5.); *see also* 42 C.F.R. § 422.503(a).

From approximately 2004 to approximately November 2012, HHPO paid Bosman the amount allowed under the Medicare Fee Schedule, which is the amount that the federal government pays under the original Medicare fee for service option.  (Hulon Decl. ¶ 5.)  Due to a technical error in the electronic claims processing system from approximately November 2012 to approximately December 2013, HHPO paid Bosman the entire amount of the bill submitted, regardless of whether the bill was more than the Medicare Fee Schedule.  (*Id.* ¶ 6.)  Once the computer error was corrected around December 2013, HHPO reverted to paying Bosman according to the Medicare Fee Schedule. (*Id.* ¶ 7.)

HHPO has a contractual and legal obligation to "ameliorate fraud, waste and abuse" in the federal Medicare program.  (*See* Olson Decl. Exs. 1-3, at IX.A.1).  In furtherance of this obligation, HHPO identified claims that were overpaid as a result of the computer error.   (Hulon Decl. ¶ 8.)  After notifying Bosman of the overpayments, HHPO requested that Bosman return the overpayments.  (*Id.* ¶¶ 8, 9.)  HHPO explained that it would recoup the amount of overpayments from future amounts owed to Bosman if

---

[4] A defendant is permitted to submit a wide range of evidence, including declarations, to support its petition for removal.  *See Ohio Nat'l Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir. 1990).

it failed to return the overpayments within the specified time period.  (*Id*. ¶ 10.)  Bosman

alleges that HHPO recouped the overpayments.  (Am. Compl. ¶ 40.)

Bosman failed to exhaust administrative remedies under the Medicare Act with

respect to the alleged recoupment of overpayments. (Exhibit C, Declaration of Toneda

Babbage ("Babbage Decl.") ¶ 4.)  OSCA did not submit any claims to HHPO, and HHPO

has not sought to recover any overpayments from the OSCA.  (Hulon Decl. ¶ 11.)

Plaintiff OSCA did not exhaust administrative remedies under the Medicare Act on

behalf of any members.  (Babbage Decl. ¶ 5.)

## LAW AND ARGUMENT

## I.      REMOVAL IS PROPER PURSUANT TO 28 U.S.C. § 1442(a)(1).

This action is removable pursuant to the federal officer removal statute, 28 U.S.C.

§ 1442(a)(1), which permits Defendants to remove any action that is against or directed

to:

> The United States or any agency thereof or any officer (or any person
> acting under that officer) of the United States or of any agency thereof, in
> an official or individual capacity, for or relating to any act under color of
> such office or on account of any right, title or authority claimed under any
> Act of Congress for the apprehension or punishment of criminals or the
> collection of revenue.

28 U.S.C. § 1442(a)(1).  "The federal officer removal statute is not 'narrow' or

'limited.'"  *Bennett v. MIS Corp.,* 607 F.3d 1076, 1084 (6th Cir. 2010) (quoting

*Willingham v. Morgan,* 395 U.S. 402, 406-07 (1969)).  The statute contains historically

broad terms such as "acting under" and therefore "must be liberally construed."  *Jacks v.*

*Meridian Res. Co., LLC*, 701 F. 3d 1224, 1230 (8th Cir. 2012) (quoting *Watson v. Phillip*

*Morris Cos., Inc.,* 551 U.S. 142, 147 (2007)).  This liberal interpretation comports with

the statute's purpose, which is "to prevent federal officers or persons acting under their direction from being tried in state courts for acts done within the scope of their federal employment." *Peterson v. Blue Cross/Blue Shield*, 508 F.2d 55, 58 (5th Cir. 1975). "At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Bennett,* 607 F.3d at 1084 (quoting *Willingham,* 395 U.S. at 406-07).

The federal officer statute allows removal of lawsuits even where the United States or its employees are not named as defendants in the litigation. When the defendant is not a federal officer itself, it must establish (1) "it is a 'person' within the meaning of the statute who act[ed] under [a federal] officer"; (2) "it performed the actions for which it is being sued under color of [federal] office"; and (3) "it raised a colorable federal defense." *Bennett,* 607 F.3d at 1085 (quotations omitted). Each of these elements is met here.

### A.     HHPO is a Person[5] Acting Under A Federal Agency.

Plaintiffs allege that HHPO acted as Medicare Advantage organizations when it paid for services rendered to Medicare beneficiaries and when it recouped the overpayments. (Am. Compl. ¶¶ 13, 24, 31 & 40.) "[P]recedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Bennett,* 607 F.3d at 1086

---

[5] "[T]he overwhelming weight of recent judicial authority supports the view that corporations qualify as 'persons' under the federal officer statute." *Thompson v. Cmty. Ins. Co.*, 1999 U.S. Dist. LEXIS 21725, at *11 (S.D. Ohio Mar. 3, 1999); *see Bennett,* 607 F.3d at 1085 ("interpreting 'person' to include corporations is consistent with the statutory scheme")).

(emphasis in original).  Such assistance includes helping "fulfill . . . basic governmental tasks . . . that, in the absence of a contract with a private firm, the Government itself would have had to perform."  *Id.* at 1086-87 (quoting *Watson,* 551 U.S. at 153-54).  A private party acts under a federal agency when the relationship "was an unusually close one, involving detailed regulation, monitoring, and supervision."  *Id.* at 1088 (quoting *Watson,* 551 U.S. at 153).

Courts have found that private entities that "help the government fulfill the basic task of establishing a health benefits program" under the direction of a federal agency are permitted to remove under the federal officer removal statute.  *Jacks v. Meridian Res. Co., LLC,* 701 F.3d 1224, 1233-34 (8th Cir. 2012); *see also Mann*, 2010 U.S. Dist. LEXIS 134821, at *7 (finding that "Defendants, as a provider of the Medicare Advantage Plan, provided assistance to a federal officer beyond mere compliance with the law"); *Cupp v. Johns*, 2014 U.S. Dist. LEXIS 30537, at *6 (W.D. Ark. Mar. 10, 2014) (finding "that Humana was acting according to the provisions of the Medicare Act, as an [Medicare Advantage] provider as contemplated by that Act . . ."); *Thompson,* 1999 U.S. Dist. LEXIS 21725 at *12-13 (concluding that Anthem Blue Cross and Blue Shield, "in its role as a provider of Medicare 'risk' coverage, was acting under a federal officer, the Secretary of the Department of Health and Human Services.").

Medicare Advantage organizations, such as HHPO, assist the federal government in administering federal health care benefits to Medicare recipients.  (Hulon Decl. ¶ 4.); *see also* 42 C.F.R. § 422.503(a). Congress enacted the Medicare Part C program, allowing the federal government to contract with private entities with the intention of

saving on health care costs and providing beneficiaries with more options. *Mann,* 2010 U.S. Dist. LEXIS 134821, at *8.  Absent a contract with the Medicare Advantage organizations, the federal government would have to administer the benefits itself through the original Medicare fee for service option (and the benefits administered under Part C are the same as those under Parts A and B). *See* 42 U.S.C. §§ 1395w-21(a)(1)(A)-(B).

 "As part of the contract and pursuant to federal law, these Medicare Advantage plans are regulated, monitored, and directly controlled by CMS . . . ." *See Mann,* 2010 U.S. Dist. LEXIS 134821, at *8; *see also Thompson,* 1999 U.S. Dist. LEXIS 21725, at *13 ("Defendant's relationship with the Plaintiffs was governed, from its inception through its ultimate termination, by a multitude of contractual, administrative, and statutory regulations, all imposed by the federal government via the authority of [HHS].").  CMS directs how Medicare Advantage organizations administer these benefits through comprehensive and detailed regulations, formal and informal guidance (such as the Medicare Managed Care Manual), Medicare Appeals Council decisions and their contract. *See* 42 C.F.R. § 422.1(b) (Part 422 "establishes standards and sets forth the requirements, limitations, and procedures for Medicare services furnished, or paid for, by Medicare Advantage organizations through Medicare Advantage plans"); CMS, Medicare Managed Care Manual, Pub. No. 100-16, available at www.cms.com; *see also* 42 C.F.R. § 422.504 (identifying required terms of the contract between CMS and Medicare Advantage organizations); 42 C.F.R. § 422.608 (Medicare Appeals Council is the last step in the administrative process before filing suit in federal court).

CMS exerts "extensive governmental control" over Medicare Advantage organizations.  *Thompson,* 1999 U.S. Dist. LEXIS 21725, at *16.  CMS monitors and supervises Medicare Advantage organizations in a variety of ways, including through the annual bid process.  Every year, CMS publishes an annual call letter, which details the requirements for companies desiring to submit a bid to CMS to become a Medicare Advantage organization in the following year.  CMS, Medicare Managed Care Manual, Pub. 100-16, Ch. 11 § 60.  The bid process provides CMS with the opportunity to review detailed information about the company, ask questions, and comment on the bid application.  *See* 42 U.S.C. § 1395w-27(a); 42 C.F.R § 422.250.  CMS also conducts inspections and audits of Medicare Advantage organizations independent of the bid process.  42 U.S.C. § 1395w-27(d); 42 C.F.R. § 422.504(e)(2).  If Medicare Advantage organizations "violate their contractual, regulatory or statutory obligations," CMS can impose various sanctions, including terminating the contract with CMS.  *Thompson,* 1999 U.S. Dist. LEXIS 21725, at *14.

CMS requires Medicare Advantage organizations to submit extensive data on the Medicare Advantage plans, such as "data necessary to characterize the context and purposes of each item and service provided to a Medicare enrollee by a provider, supplier, physician, or other practitioner."  42 C.F.R. § 422.310(b).  "The data must account separately for each provider, supplier, physician, or other practitioner that would be permitted to bill separately under the original Medicare program, even if they participate jointly in the same service."  *Id.* at (c)(2).

As discussed more fully below, Congress and CMS have even determined the rate at which Medicare Advantage organizations are required to pay providers who do not have a contract with the Medicare Advantage organization ("Non-Participating Providers"), which is the primary issue in this case.  *See* 42 U.S.C. § 1395w-22(k); 42 C.F.R. §§ 422.100(b)(2), 422.214(a); CMS, *Medicare Managed Care Manual,* Pub. No. 100-16, at Ch. 6, § 100.  CMS also requires Medicare Advantage organizations to detect and deter fraud, waste and abuse in the federal Medicare program.  *See e.g.,* 42 C.F.R. § 422.504(h)(1); (Olson Decl. Ex. 1-3, at IX.A.1.)  It was pursuant to this directive that HHPO recouped overpayments at issue in this case.

Here, HHPO acted as a Medicare Advantage organization under the close supervision of a federal agency, CMS.  HHPO acted pursuant to its contract with CMS and consistent with the authority and specific direction of Congress and CMS.  Thus, the first element is satisfied.

**B.      HHPO Performed the Actions for Which It is Being Sued Under Color of Federal Office.**

To satisfy the second element, a defendant "must show a nexus, a 'causal connection between the charged conduct and the asserted official authority."  *Bennett,* 607 F.3d at 1088 (quoting *Jefferson County v. Acker,* 527 U.S. 423, 431 (1999)).  "[W]hether the challenged act was outside the scope of [defendant's] official duties, or whether it was specifically directed by the [agency], is one for the federal – not state — courts to answer."  *Id.*

"The Supreme Court has indicated that the hurdle erected by this requirement is quite low."  *Id.* (quotations omitted).  Defendant "must show it is being sued because of

the acts it performed at the direction of the federal officer." *Id.* "The Defendant need not have acted pursuant to a direct order, however. It is sufficient . . . if the acts underlying the Plaintiffs' lawsuit were performed pursuant to comprehensive and detailed regulations." *Thompson,* 1999 U.S. Dist. LEXIS 21725, at *20. Humana satisfies this element by showing that "[t]he claims asserted . . . are due to their actions as a Medicare Advantage Plan provider." *Mann*, 2010 U.S. LEXIS 134821, at *10.

In addition to extensively regulating, supervising and directing Medicare Advantage organizations generally, Congress and CMS have provided specific direction to Medicare Advantage organizations with respect to their relationship with, and the rate of payments to, Non-Participating Providers. *See, e.g.,* 42 U.S.C. §§ 1395cc(a)(1)(O); 1395w-22(d),(k); 1395w-27(f); 42 C.F.R. §§ 422.100(b), 422.214, 422.520. The contract with CMS specifically requires that it comply with the section of its regulations devoted to the relationship between Medicare Advantage organizations and providers. (Olson Decl., Exs. 1-3, at § III.D.1) ("The MA Organization agrees to comply with all applicable provider requirements in 42 CFR Part 422 Subpart E, including . . . rules governing payments to providers"); *see also* 42 C.F.R. §§ 422.200 *et seq.* CMS has devoted an entire chapter of the Medicare Managed Care Manual to provider relationships, including "Special Rules for Services Provided by Non-Contract Providers." Medicare Managed Care Manual, Pub. No. 100-16, Ch. 6, § 100.

Congress and CMS have established that Medicare Advantage organizations are obligated to pay Non-Participating Providers, and Non-Participating Providers are obligated to "accept, ***as payment in full***, the amounts that the provider could collect if the

beneficiary were enrolled in original Medicare." *See* 42 U.S.C. § 1395w-22(k) (non-participating providers "shall accept as payment in full" the Medicare allowable amount); 42 C.F.R. §§ 422.100(b)(2), 422.214(a) (non-participating provider "must accept, as payment in full, the amounts that the provider could collect if the beneficiary were enrolled in original Medicare."); *Medicare Managed Care Manual,* Pub. No. 100-16, at Chapter 6, § 100; *see also* 42 U.S.C. § 1395w-22(a)(2) (a payer satisfied its obligation to a non-participating provider by paying it the allowable Medicare amount).  Providers are very familiar with the Medicare Fee Schedule and can calculate the estimated payment amount using CMS' website, http://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx.

"Thus, this provision of law imposes a cap on payment to non-contract providers of provider payment amounts plus beneficiary cost-sharing amounts applicable in Original Medicare, and ensures that non-contract providers not balance bill MA plan enrollees for other than MA plan cost-sharing amounts." *Medicare Managed Care Manual,* Pub. No. 100-16, at Ch. 6, § 100.  "In addition, under Federal law, non-contract providers are subject to penalties if they accept more than Original Medicare amounts." *Id.*

Bosman, as a Non-Participating Provider, had an obligation to report and return payments in excess of the Original Medicare amounts.  42 U.S.C. § 1320a-7k(d).  When HHPO discovered that it had overpaid Bosman in excess of the Medicare Fee Schedule and Bosman had failed to comply with its obligation to return the overpayments, it had a contractual and legal obligation to seek the return of these funds in order to "ameliorate

13

fraud, waste and abuse" in the federal Medicare program.  (*See* Olson Decl. Exs. 1-3, at IX.A.1.)

HHPO acted under color of federal office when it paid Medicare benefits and when it recouped the overpayments.  Thus, HHPO has satisfied the second element.

**C.    HHPO Has Several Colorable Federal Defenses.**

A removing defendant need only "assert a 'colorable' federal defense at the time of removal."  *Bennett,* 607 F.3d at 1084.  It need not "prove the success of the defense." *Id.* at 1090.  "One of the primary purposes of the removal statute – as its history clearly demonstrates – *was to have such defenses litigated in the federal courts*."  *Id.* at 1085 (quoting *Willingham,* 395 U.S. at 406-07) (emphasis in original).

HHPO has several defenses based on federal law, including that: (1) Bosman failed to exhaust administrative remedies under the Medicare Act; (2) Bosman's state law claims are expressly preempted by the Medicare Act; (3) Bosman's state law claims are preempted by the doctrine of conflict preemption; and (4) HHPO complied with federal law in administering Medicare benefits.  Thus, HHPO has satisfied this last element and are entitled to a federal forum.

1.    Bosman failed to exhaust administrative remedies.

If the claims are "inextricably intertwined" with a claim for Medicare benefits, then the claims "arise under the Medicare Act" and the claimant must exhaust all available administrative remedies before seeking judicial relief.  *Kaiser v. Blue Cross of Cal.,* 347 F.3d 1107, 1112, 1114 (9th Cir. 2003).  And courts must "read the term 'arising under' broadly."  *TriCenturion, Inc.,* 2011 U.S. Dist. LEXIS 33032, at *14 (E.D. Pa. Mar.

28. 2011). As a result, the focus is not on "the legal specifics of the claims that are raised" or the "type of remedy" sought. *Kaiser,* 347 F.3d at 1112; *Uhm v. Humana,* 620 F.3d 1134, 1142-43 (9th Cir. 2010) (holding that plaintiff's breach of contract and unjust enrichment claims are "at bottom, merely creatively disguised claims for benefits"); *Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 194 (S.D.N.Y. 2012) ("Plaintiff's claims . . . arise under the Medicare Act, notwithstanding the fact that they are framed as state law claims.").

Here, Bosman's claims are "inextricably intertwined" with a claim for Medicare benefits because the primary issues are whether it is entitled to receive reimbursements for services provided to Medicare beneficiaries in excess of the original Medicare rates and if not, whether it is entitled to retain the overpayments received. *See e.g., Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 582 (6th Cir. 1995) (denials of payment for non-emergency health transportation services to ambulance providers were "at essence a claim of entitlement to benefits, which must first be pressed through the administrative review process"); *Productive MD, LLC v. Aetna Health, Inc.,* 969 F. Supp. 2d 901, 934 (M.D. Tenn. 2013) (dismissing provider's claim for lack of subject matter when it failed to exhaust remedies with respect to the insurance plan's denial of its claim for reimbursement).

It is undisputed that Bosman and the OSCA did not exhaust administrative remedies. (Am. Compl. ¶¶ 38, 39; Babbage Decl. ¶¶ 4, 5.) If they had exhausted administrative remedies, they would be suing the Secretary of HHS in federal court,

15

which is the last step in the process.  *See* 42 C.F.R. § 422.612.  Because Bosman failed to exhaust administrative remedies, HHPO has a dispositive federal defense.

> 2.  Bosman's claims are barred by the express preemption clause.

Bosman's claims are expressly preempted by the Medicare Act, which is a colorable federal defense for the purposes of removal.  *See, e.g., Jacks,* 701 F.3d at 1235 (finding defendant had a colorable federal defense that plaintiff's claims were expressly preempted pursuant to preemption provision under the FEHBA); *Mann,* 2010 U.S. Dist. LEXIS 134821, at *12 (finding federal preemption was a colorable federal defense). "The Supreme Court has made clear that Congress may displace state law through express preemption provisions."  *Uhm,* 620 F.3d at 1148 (citing *Altria Group, Inc. v. Good,* 555 U.S. 70 (2008)).

Congress articulated a clear intent to preempt state laws affecting Medicare Advantage organizations when it enacted the following broad express preemption clause:

> Relation to State laws.  The standards established under this part [42 USCS §§ 1395w-21 et seq.] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3); *accord* 42 C.F.R. § 422.402; *see also Potts*, 897 F. Supp. 2d at 195.

Here, Congress and CMS have established specific federal standards that are directly applicable to HHPO.  There is a federal standard (with accompanying regulations) governing the amount that Non-Participating Providers must accept, as payment in full.  *See* 42 U.S.C. § 1395w-22(k) (emphasis added); 42 C.F.R. §§

16

422.100(b)(2); 422.214(a), 422.216(a)(2); *Medicare Managed Care Manual,* Pub. No. 100-16, at Ch. 6, § 100, *see also* 42 U.S.C. § 1395w-22(a)(2).   Once there is an established federal standard governing Medicare Advantage organizations, any standards sought to be imposed by state statutes or common law are preempted.  *See, e.g., Uhm*, 620 F.3d at 1158 (finding that beneficiaries' fraud and state consumer protection claims were preempted by the Medicare Act).    Bosman's state law claims seek to impose state common law standards upon a Medicare Advantage plan in contravention of federal guidance.  Therefore, HHPO has a colorable dispositive federal defense that Bosman's claims are barred by the express preemption provision.

> ### 3.  <u>Bosman's claims are barred by the conflict preemption doctrine.</u>

Conflict preemption exists where "it is impossible for a private party to comply with both state and federal law," or "where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal citations and quotations omitted).

Here, if the Court were to determine that Bosman was entitled to reimbursements greater than the Medicare Fee Schedule under any of the state causes of action, this would represent a direct conflict with the federal laws requiring them to accept this amount as payment in full.  *See* 42 U.S.C. §§ 1395w-22(k), 1320a-7k(d).  42 C.F.R. §§ 422.100(b)(2); 422.214(a), 422.216(a)(2); CMS, *Medicare Managed Care Manual,* Pub. No. 100-16, at Ch. 6, § 100, *see also* 42 U.S.C. § 1395w-22(a)(2).

Moreover, if the Court found that a Medicare Advantage organization is not permitted to recoup erroneous payments, this would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress to preserve financial resources by seeking to limit fraud, waste and abuse in the Medicare program. Therefore, HHPO has a colorable dispositive federal defense that Bosman's claims are barred by the conflict preemption doctrine.

### 4.  HHPO complied with federal law.

"The scope of our inquiry here is only whether [defendant] has advanced a colorable federal defense (*including an assertion that he complied with all his federal law obligations),* not whether his defense will be successful." *Magnin v. Teledyne Cont'l Motors,* 91 F.3d 1424, 1429 (11th Cir. 1996) (emphasis added). In addition to the defenses detailed above, HHPO asserts that it has complied with its federal law obligation to recoup the amounts that it inadvertently overpaid in excess of the Medicare Fee Schedule. HHPO is entitled to have a federal forum determine whether it complied with this obligation.

## V.  REMOVAL IS ALSO PROPER PURSUANT TO 28 U.S.C. § 1441.

Alternatively, this action is also independently removable pursuant to 28 U.S.C. § 1441(a), which provides that a defendant may remove a civil action where the federal court has original jurisdiction over the matter. Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. "A case 'arises under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the

cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)) (emphasis added).

Here, Bosman's claims raise a substantial and disputed federal issue that should be resolved in federal court, thereby giving rise to federal jurisdiction.  *See Grable & Sons Metal Products v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  The primary matter in dispute in this case is whether Bosman was entitled to accept, and conversely whether HHPO (or any other Medicare Advantage organization) was entitled to pay, Medicare benefits to Non-Participating Providers in an amount greater than the amount allowed under the Medicare Fee Schedule.  Indeed, Bosman seeks a declaration from the Court that "Humana's payments to Plaintiffs in excess of the Medicare Fee Schedule do not constitute 'overpayments', and that Humana has no legal or contractual basis for recouping fees which it alleges were 'overpaid' to Plaintiff Class Members."  (Am. Compl. ¶ 57.)  Bosman's claims for relief thus raise a stated federal issue, namely, whether federal law requires overpayments made by a Medicare Advantage organization to a provider related to services provided by the provider to a Medicare beneficiary to be recouped and/or repaid.

The issues related to HHPO's recoupment obligations (and Bosman's corresponding repayment obligations) under federal law with respect to the overpayments are actually disputed and substantial.  *See New York City Health & Hosps. Corp. v. WellCare of N.Y.*, 769 F. Supp. 2d 250, 252, 256-57 (S.D.N.Y. 2011) (holding that the

*Grable* standard was satisfied where interpretation of Medicare laws and regulations was necessary to resolve a provider's Medicare payment-related breach of contract and unjust enrichment claims).  HHPO not only claims that it was permitted to attempt to recoup the overpayments, but that federal law required them to do so.  Bosman, by contrast, asserts that the Medicare Fee Schedule merely represents a floor on the reimbursements that he may receive, and that Bosman is entitled to a windfall as a result of the error.

Resolution of this issue turns on a legal interpretation of federal law and the decision reached will have wide-ranging consequences – not only for this case – but for other cases involving Medicare Advantage organizations and providers.  *See Franchise Tax Bd.*, 463 U.S. at 9 (holding that a federal question is sufficiently substantial to support federal jurisdiction if "the vindication of a right under state law necessarily turn[s] on some construction of federal law").

The substantial nature of the federal issues implicated by Bosman's claims is further supported by the highly complex regulatory scheme applicable to Medicare Advantage organizations, including applicable federal standards and regulations regarding the amounts that Non-Participating Providers must accept as payment in full for services provided to enrollees in Medicare Advantage plans.  In addition, Bosman is seeking a determination contrary to his obligation under federal law requiring the reporting and return of overpayments.  In a case such as this one, where a complex regulatory scheme is implicated by state law claims, and where a ruling could impact Medicare Advantage plans across the country, there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  *Grable*, 545 U.S. at

313; *see also West Virginia v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007) (quoting *Grable* and recognizing that the existence of "an intricate federal regulatory scheme including detailed federal funding provisions, requiring some degree of national uniformity in interpretation" supports a finding of federal jurisdiction); *WellCare of N.Y.*, 769 F. Supp. 2d at 259 ("the complex federal regulatory scheme applicable to MA Organizations similarly calls for the 'hope of uniformity that a federal forum offers on federal issues.'").

Finally, federal jurisdiction over this and similar actions "would not materially affect, or threaten to affect, the normal currents of litigation" and will not disturb any congressionally approved balance of federal and state judicial responsibilities. *Grable*, 545 U.S. at 319; *WellCare of N.Y.*, 769 F. Supp. 2d at 259 ("there is no reason to believe that finding jurisdiction in this case would open the floodgates and disrupt the litigation current – particularly because of the significant administrative review requirements that do exist in the Medicare field . . . ."). Accordingly, removal is warranted under 28 U.S.C. §§ 1331 and 1441 based on the existence of a substantial federal question under *Grable* and its progeny.

## VI.  THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), within 30 days of service of the Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (holding 30-day time period under removal statute begins to run from date of formal service). The Complaint was served on Humana Health Plan of Ohio, Inc. on October 1, 2014 by certified mail. Based on a review of Humana's records,

Humana Health Plan, Inc. has not been formally served.  Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers filed in the state court action are attached hereto as Exhibit D.

The venue of this removal action is proper pursuant to 28 U.S.C. § 115(a)(1) and 1441(a), because the United States District Court for the Northern District of Ohio includes Summit County, Ohio, where the state action was filed. A filing fee of $450.00 is being tendered to the Clerk of the United States District Court for the Northern District of Ohio.  No previous application has been made for the relief requested herein.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs' counsel and a copy is being filed with the Clerk of the Court of Common Pleas in and for Summit County, Ohio.

## CONCLUSION

Defendants are entitled to remove this action pursuant to 28 U.S.C. §§ 1441 and 1442(a)(1) because they satisfied each of the elements of the federal officer removal statute and the standard for substantial federal question jurisdiction under *Grable* and its progeny, and complied with the procedural requirements for removal.

Dated:  October 16, 2014.

Respectfully submitted,

*/s Philip M. Oliss*
Philip M. Oliss (0066528)
F. Maximilian Czernin (0087485)
Squire Patton Boggs (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8780
*philip.oliss@squirepb.com*
*maximilian.czernin@squirepb.com*

and

Pierre H. Bergeron (0071402)
Squire Patton Boggs (US) LLP
221 East Fourth Street, Suite 2900
Cincinnati, Ohio 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201
*pierre.bergeron@squirepb.com*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Notice of Removal was filed electronically with the Court's electronic filing system on this 16th day of October, 2014.  Parties may access this filing through the Court's electronic docket system.  In addition, a true and correct copy of the foregoing memorandum was served via E-mail to counsel for Plaintiffs this 16th day of October, 2014:


John N. Childs (#0023489)
Jeana M. Singleton (#0079542)
Daniel J. Rudary (#0090482)
Brennan, Manna & Diamond LLC
75 E. Market Street
Akron, OH 44308
Telephone:      (330) 253-5060
Facsimile:       (330) 253-1977
Email:            jnchilds@bmdllc.com
                     Jmsingleton@bmdllc.com
                     drudary@bmdllc.com


*s/ Philip M. Oliss*
*One of the Attorneys for Defendant*